IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **LYN TRAN** | § | |
| | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:17-CV-00817-B** |
| | § | |
| | § | |
| **ALLSTATE FIRE & CASUALTY** | § | |
| **INSURANCE COMPANY** | § | |
| | § | |
| *Defendant* | § | |

**PLAINTIFF LYN TRAN'S FIRST AMENDED COMPLAINT**

**TO THE HONORABLE JUDGE OF SAID COURT:**

  **COMES NOW,** Lyn Tran, (hereinafter referred to as "Plaintiff"), complaining of Allstate Fire & Casualty Insurance Company, (hereinafter referred to as "Defendant") and for cause of action would respectfully show unto this Honorable Court and Jury as follows:

**JURISDICTION AND VENUE**

1. This Honorable Court has jurisdiction and venue is proper because (1) one or more acts or omissions forming the basis for liability occurred in Tarrant County, Texas, (2) Defendant is a domestic insurance company that engages in the business of insurance in the State of Texas, and (3) Plaintiff's causes of action arise out of Defendant's business activities in the State of Texas, and (4) Plaintiff seeks monetary relief of over $100,000.00 exclusive of interests and costs.

2. Venue lies in the U.S. Northern District of Texas, the district in which the claim arose, pursuant to 28 U.S.C. § 1391(b).

## PARTIES

1. Plaintiff is an individual residing in Dallas County, Texas.

2. Allstate Fire & Casualty Insurance Company is a foreign insurance company engaging in the business of insurance in the State of Texas. Defendant may be served with process by serving its registered agent of service, C T Corporation System, located at the following address: 1999 Bryan St Ste 900, Dallas TX 75201 -3136.

## FACTS

3. This matter revolves largely around a first-party insurance dispute regarding the extent of damages and amount of loss suffered to Plaintiff's property. In addition to seeking economic and penalty-based damages from Defendant, Plaintiff also seeks compensation from Defendant for damages caused by improper evaluation of the extensive losses associated with this cause.

4. Plaintiff purchased a policy from Defendant, (hereinafter referred to as "the Policy"), which was in effect at the time of loss.

5. The Policy was purchased to insure Plaintiff's property, (hereinafter referred to as "the Property"), which is located at 8405 Lexington Drive, Rowlett, Texas 75089.

6. Defendant Allstate Fire & Casualty Insurance Company and/or its agent sold the Policy to Plaintiff.

7. Plaintiff is a "consumer" as defined under the Texas Deceptive Trade Practices Act ("DTPA") because she is an individual who sought or acquired by purchase or lease, goods or services, for commercial, personal or household use.

8. On or about April 11, 2016, Plaintiff experienced a severe weather related event which caused substantial damage to the Property and surrounding homes and businesses in the area. The Property's damage constitutes a covered loss under the Policy issued by Defendant Allstate Fire & Casualty Insurance Company. Plaintiff subsequently reported the claim on or around July 12, 2016, and a claim was subsequently opened on or around July 25, 2016 and Defendant.

9. On July 27, 2016, Defendant's assigned adjuster inspected the Property. Defendant's assigned adjuster wrongfully maintained that no hail or windstorm damage was observed. Defendant inexplicably maintains that Plaintiff's damages stem from a prior windstorm that occurred in 2014, for which Plaintiff opened a claim. Defendant wrongfully maintained that such damage was not related to the storm on or around April 11, 2016. Thereafter, Defendant wrongfully underpaid Plaintiff's claim and refused to issue a full and fair payment for the covered loss as was rightfully owed under the Policy.

10. Defendant made numerous errors in estimating the value of Plaintiff's claim, as exhibited by its assigned adjuster's method of investigation and estimation of Plaintiff's loss, all of which were designed to intentionally minimize and underpay the loss incurred by Plaintiff. Defendant contends that damages to Plaintiff's property stem from a storm that occurred on or around October 24, 2014, however, Defendant has failed to provide any correspondence describing the damages that stem from the 2014 loss date. More specifically, Defendant's October 8, 2015 estimate in relation to the hail storm that occurred on or around October 24, 2014 shows no damages to Plaintiff's Property. This shows that Defendant's assigned adjuster failed to fully quantify Plaintiff's covered losses, thus demonstrating that Defendant's assigned adjuster did not conduct a thorough investigation of Plaintiff's claim

and/or intentionally adjusted Plaintiff's claim improperly. More importantly, this shows that Defendant found no hail and wind associated with the 2014 loss and the damage to the property is and must be from the April 11, 2016 Date of Loss.

11. Defendant, independently and through its assigned adjuster, intentionally and knowingly conducted a substandard investigation of the Property. This is evidenced by Defendant's assigned adjuster's estimate, which failed to include all necessary items Plaintiff is entitled to under the Policy to place the Property in a pre-loss condition. These necessary items are covered and required under the International Building Code and/or International Residential Code, as adopted by the State of Texas in 2001.

12. On or around January 30, 2017 Defendant sent correspondence stating that "the inspection of the exterior of the home revealed no recent wind or hail damage" and that "the only storm related damages observed during this inspection were damages paid for in a prior loss that the repairs had not been completed yet." However, Defendant's estimate in relation to the storm that occurred on or around October 24, 2014 indicates no damages, nor does Defendant's adjuster/inspector provide a reasonable explanation as to the "prior" damages that Plaintiff's property incurred. This is confusing and misleading and is an attempt by Defendant to adjust the claim such that Plaintiff loss amount would be under the deductible or denied in its entirety.

13. The Defendant knowingly and intentionally failed to properly assess Plaintiff's property damage. The results of Defendant's poor inspection forced Plaintiff to retain a public adjuster to properly evaluate damages to the Property. On or around September 12, 2016, Plaintiff's public adjuster inspected the Property. Plaintiff's Public Adjuster estimated the damage to the property to be in the amount of $40,991.34. The public adjuster's investigation revealed

significant damage to Plaintiff's roof, as well as the interior and exterior of Plaintiff's property. If the Defendant would have properly inspected Plaintiff's property, the damage would have been easily discoverable. Also, photos taken by the public adjuster clearly show extensive damage to Plaintiff's roof.

14. Based on the investigation, Plaintiff's public adjuster recommended significant repairs to the roof, including but not limited to: the removal of 35.33 squares and replacement of 39 squares 3-tab composition shingle roofing material, removing and replacing the roofing felt, sheathing, drip edge, step flashing; installation of asphalt starter, which is required pursuant to IRC R905.2.4.1 and R904 to comply with the manufacturer specifications and warranty for a minimum wind rating of 90 miles per hour; and the removal and replacement of roof valley lining, which is required pursuant IRC R905.2.8.2 and R904.1.

15. With regard to the exterior, Plaintiff's public adjuster estimated for removal and replacement of the siding trim, painting, and removal and replacement of roof panels. Also, Plaintiff's Public Adjuster recommended the removal and replacement of the gutters/downspout.

16. With regard to the interior damage, Plaintiff's public adjuster estimated for the pack-out, pack-in costs of the contents.

17. Defendant's adjuster intentionally and wrongfully conducted an improper inspection of Plaintiff's Property. This is evidenced by the inability to find any "recent" damage to Plaintiff's property. Plaintiff's Public Adjuster identified damage that would have been easily discoverable had Defendant conducted a proper investigation. The mere fact that Defendant's inspection labeled Plaintiff's damage to as "prior damage" that was 1) Never reasonably explained to Plaintiff; or 2) Identified in Defendant's estimate shows Defendant's intent to wrongfully underpay or deny Plaintiff's claim.

18. On September 22, 2016, Defendant conducted a re-inspection of the Property. Again, Defendant wrongfully and intentionally determined that the damage came as a result of a later hail or windstorm unrelated to the hail or windstorm that occurred on or around April 11, 2016. Similarly, Defendant's re-inspection fails to provide a reasonable explanation why Plaintiff's claim was denied. Based on the inspection conducted by Plaintiff's Public Adjuster, it is clear that the results of Defendant's inspection and re-inspection are completely erroneous.

19. Defendant's estimate did not allow for adequate funds to cover the cost of repairs and therefore grossly undervalued all of the damages sustained to the Property. As a result of Defendant's conduct, Plaintiff's claim was intentionally and knowingly underpaid.

20. Defendant's assigned adjuster acted as an authorized agent of Defendant Allstate Fire & Casualty Insurance Company. Defendant's assigned adjuster acted within the course and scope of their authority as authorized by Defendant. Plaintiff relied on Defendant and Defendant's assigned adjuster to properly adjust the claim regarding the Property and to be issued payment to fix such damage, which did not happen and has not been rectified to date.

21. Defendant Allstate Fire & Casualty Insurance Company failed to perform its contractual duties to adequately compensate Plaintiff under the terms of the Policy.  Specifically, Defendant refused to pay the full proceeds owed under the Policy. Due demand was made by Plaintiff for proceeds to be in an amount sufficient to cover the damaged Property.

22. Defendant and/or Defendant's assigned agent sold the Policy to Plaintiff, making various statements and representations to Plaintiff that the Property would be covered. Relying on the promises and representations made by Defendant and/or Defendant's assigned agent,

Plaintiff filed a claim under the Policy with the belief that the Property would be covered after a severe weather event such as the one that damaged the Property.

23. All conditions precedent to recovery under the Policy had, and have, been carried out and accomplished by Plaintiff.

24. As a result of Defendant's wrongful acts and omissions, Plaintiff was forced to retain the professional services of McClenny Moseley & Associates, PLLC, who is representing Plaintiff with respect to these causes of action.

## CAUSES OF ACTION

## COUNT ONE: BREACH OF CONTRACT

25. Plaintiff hereby incorporates by reference all facts and circumstances set forth under the foregoing paragraphs.

26. According to the Policy that Plaintiff purchased, Defendant had the absolute duty to investigate Plaintiff's damages and to pay Plaintiff's Policy benefits for the claim made due to the extensive damages caused by the wind and hail storm occurring on or around April 11, 2016. Defendant's conduct constitutes a breach of the insurance contract between Plaintiff and Defendant. This is evidenced by Defendant's vague and ambiguous explanation as to the damage of the property. Defendant's explanation essentially states that Plaintiff's Property was damaged by a prior storm unrelated to the storm that occurred on or around August 11 2016. However, Defendant fails to provide any correspondence detailing or describing such damage.

27. As a result of the wind and hail storm that occurred on or around April 11, 2016, Plaintiff suffered extreme damages. Despite objective evidence of such damages, Defendant has

breached its contractual obligations under the Policy by failing to pay Plaintiff benefits related to the cost to properly repair Plaintiff's Property, as well as for related losses. As a result of this breach, Plaintiff has suffered actual and consequential damages.

### COUNT TWO: VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT

28. Plaintiff hereby incorporates by reference all facts and circumstances set forth within the foregoing paragraphs.

29. Defendant and its representatives engaged in false, misleading, or deceptive acts or practices that constitute violations of the Texas Deceptive Trade Practices Act ("DTPA"), which is codified in the Texas Business and Commerce Code ("TEX. BUS. & COM. CODE"), including, but not limited to:

    a. Using or employing an act or practice in violation of the Texas Insurance Code (TEX. BUS. & COM. CODE § 17.50(a)(4));

    b. Unreasonably delaying the investigation, adjustment, settlement offer and prompt resolution of Plaintiff's claim (TEX. INS. CODE § 541.060(a)(2)-(5));

    c. Failure to properly investigate Plaintiff' claim (§ 541.060(7)).

30. Plaintiff is a consumer, as defined under the DTPA, and relied upon these false, misleading, and/or deceptive acts and/or practices, made by Defendant, to its detriment. As a direct and proximate result of Defendant's collective actions and conduct, Plaintiff has been damaged in an amount in excess of the minimum jurisdictional limits of this Court, for which Plaintiff are entitled to. All of the aforementioned acts, omissions, and failures of Defendant are a producing cause of Plaintiff' damages.

31. Because Defendant's collective actions and conduct were committed knowingly and intentionally, in addition to all damages described herein, Plaintiff is entitled to recover

mental anguish damages and additional penalty damages, in an amount not to exceed three times such actual damages. TEX. BUS. & COM. CODE § 17.50(b)(1). Defendant knowingly and intentionally denied Plaintiff's claim when it wrongfully determined that Plaintiff's Property damages were by result of a "prior" unrelated hail/windstorm. Defendant's estimate of the unrelated windstorm, which occurred on or around October 24, 2014, showed zero damage. However, Defendant leans on the 2014 estimate, which revealed zero damage, as a means to justify the wrongful denial of Plaintiff's claim.

32. Defendant also violated the Texas Deceptive Trade Practices Act by violating the Texas Insurance Code and failing to properly investigate Plaintiff's claim. Defendant knowingly and intentionally denied Plaintiff's claim when it wrongfully determined that Plaintiff's Property damages were by result of a "prior" unrelated hail/windstorm. Defendant's estimate of the unrelated windstorm, which occurred on or around October 24, 2014, showed zero damage. However, Defendant leans on the 2014 estimate, which revealed zero damage, as a means to justify the wrongful denial of Plaintiff's claim. This clearly displays evidence of an improper investigation/inspection.

33. As a result of Defendant's unconscionable, misleading, and deceptive actions and conduct, Plaintiff has been forced to retain the legal services of the undersigned attorneys to protect and pursue these claims on her behalf. Accordingly, Plaintiff also seek to recover her costs and reasonable and necessary attorneys' fees as permitted under § 17.50(d), as well as any other such damages to which Plaintiff may show themselves to be justly entitled by law and in equity.

### COUNT THREE: VIOLATIONS OF THE TEXAS INSURANCE CODE

34. Plaintiff hereby incorporates by reference all facts and circumstances set forth within the foregoing paragraphs.

35. Defendant and its assigned adjusters' actions constitute violations of the Texas Insurance Code ("TEX. INS. CODE"), Chapters 541 and 542, including but not limited to:

    d. Misrepresenting to Plaintiff pertinent facts or policy provisions relating to the coverage at issue (TEX. INS. CODE § 541.060(a)(1));

    e. Failing to attempt, in good faith, to effectuate a prompt, fair and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear (§ 541.060(a)(2)(A));

    f. Failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or for the offer of a compromise settlement of a claim (§ 541.060(a)(3));

    g. Failing to affirm or deny coverage of Plaintiff' claim within a reasonable time and failing within a reasonable time to submit a reservation of rights letter to Plaintiff (§ 541.060(a)(4));

    h. Refusing, to pay a claim without conducting a reasonable investigation with respect to the claim (§ 541.060(a)(7));

    i. Forcing Plaintiff to file suit to recover amounts due under the policy by refusing to pay all benefits due (§ 542.003(b)(5));

    j. Misrepresenting an insurance policy by failing to disclose any matter required by law to be disclosed, including a failure to make such disclosure in accordance with another provision of this code (§ 541.061(5));

k.  Engaging in false, misleading, and deceptive acts or practices under the DTPA (§ 541.151(2)); and/or

l.  Failing to pay a valid claim after receiving all reasonably requested and required items from the insured (§ 542.058(a)).

36. For noncompliance with the Texas Insurance Code, Unfair Settlement Practices, Plaintiff is entitled to actual damages, which include the loss of the benefit that should have been paid pursuant to the Policy, court costs, and attorney's fees. Because Defendant acted knowingly, Plaintiff ask for three times her actual damages. § 541.152.

37. For failing to comply with the Texas Insurance Code, Prompt Payment of Claims, Plaintiff is entitled to the amount of her claim, as well as interest at the rate of eighteen (18) percent per annum of the amount of her claim as damages, together with attorney's fees. § 542.060.

38. Defendant violated the Texas Insurance Code when it failed to tender policy benefits once liability reasonably became clear and when it denied Plaintiff's claim without conducting a reasonable investigation. This is shown by the Defendant leaning on "prior damages" to justify the denial of Plaintiff's claim, and providing zero documentation that shows any damages sustained as a result of the "prior" claim. Additionally, Defendant's estimate of Plaintiff's "prior" claim in relation to a hail/windstorm that occurred on or around October 24, 2014 revealed zero damage.

### COUNT FOUR: BREACH OF THE COMMON LAW DUTY OF GOOD FAITH AND FAIR DEALING

39. Plaintiff hereby incorporates by reference all facts and circumstances in the foregoing paragraphs.

40. From and after the time Plaintiff's claim was presented to Defendant, the liability of Plaintiff to pay the full claim in accordance with the terms of the Policy was more than reasonably clear. However, Defendant has refused to pay Plaintiff in full, despite there being no basis whatsoever on which a reasonable insurance company would have relied on to deny full payment. Defendant's conduct constitutes a breach of the common law duty of good faith and fair dealing. *See Viles v. Security National Ins. Co.*, 788 S.W.2d 556, 567 (Tex. 1990) (holding that an insurer has a duty to its insureds to "investigate claims thoroughly and in good faith" and an insurer can only deny a claim after a thorough investigation shows that there is a reasonable basis to deny that claim).

41. For breach of the common law duty of good faith and fair dealing, Plaintiff are entitled to compensatory damages, including all forms of loss resulting from Defendant's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount Plaintiff owed, and/or exemplary damages for emotional distress.

## COUNT FIVE: WAIVER & ESTOPPEL

42. Plaintiff hereby incorporates by reference all facts and circumstances in the foregoing paragraphs.

43. Defendant has waived and is estopped from asserting any defenses, conditions, exclusions, or exceptions to coverage not contained in any Reservation of Rights or denial letters to Plaintiff.

## DAMAGES

44. Defendant's acts have been the producing and/or proximate cause of damage to Plaintiff that far exceeds the minimum jurisdictional limits of this Honorable Court.

45. For breach of contract, Plaintiff is entitled to regain the benefit of Plaintiff's bargain, which is the amount of Plaintiff's claim, together with attorneys' fees.

46. For noncompliance with the Texas Insurance Code, Unfair Settlement Practices, Plaintiff is entitled to actual damages, which include the loss of the benefit that should have been paid pursuant to the Policy, court costs and attorneys' fees. Plaintiff ask for three times Plaintiff's actual damages because Defendant acted knowingly and intentionally. TEX. INS. CODE § 541.152.

47. For noncompliance with Texas Insurance Code, Prompt Payment of Claims, Plaintiff is entitled to the amount of Plaintiff's claim, interest on the claim at the rate of eighteen (18) percent per year, together with attorney's fees. § 542.060.

48. For breach of the common law duty of good faith and fair dealing, Plaintiff is entitled to compensatory damages, including all forms of loss resulting from the insurer's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount the insurer owed, and/or exemplary damages for emotional distress.

49. For the prosecution and collection of this claim, Plaintiff has been compelled to engage the services of the law firm whose name is subscribed to this pleading. Therefore, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorneys in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas.

## ADDITIONAL DAMAGES & PENALTIES

50. Defendant's conduct was committed knowingly and intentionally as stated in paragraphs 49-50. Accordingly, Defendant is liable for treble damages under the Deceptive Trade Practices

Act, as well as all provisions of the Texas Insurance Code. TEX. BUS & COM. CODE §17.50(b)(1).

## ATTORNEY'S FEES

51. In addition, Plaintiff is entitled to all reasonable and necessary attorney's fees pursuant to the Texas Insurance Code, Texas Deceptive Trade Practices Act, and TEX. CIV. PRAC. & REM. CODE §§ 38.001-.005. Plaintiff thereby requests that the Court and jury award her attorney's fees and expenses.

## JURY DEMAND

52. Plaintiff demand a jury trial pursuant to FED. R. CIV. P. 8(b).

## PRAYER

53. WHEREFORE, PREMISES CONSIDERED, Plaintiff pray that judgment be entered against Defendant and that Plaintiff be awarded the actual damages, consequential damages, pre-judgment interest, additional statutory damages, post-judgment interest, reasonable and necessary attorney's fees, court costs and for all other such relief, general or specific, in law or in equity, whether pled or unpled within this First Amended Complaint.

54. For all reasons set forth above, Plaintiff pray she be awarded all such relief to which she is due as a result of the acts of Defendant, and for all such other relief to which Plaintiff may be justly entitled.

**Respectfully submitted**,

*/s/ Zack Moseley*
**McCLENNY MOSELEY & ASSOCIATES, PLLC**
James M. McClenny
State Bar No. 24091857
Federal I.D. No. 2764142
J. Zachary Moseley
State Bar No. 24092863

        Federal I.D. No. 2706476
        411 N. Sam Houston Pkwy E.
        Suite 200, Houston, TX 77060
        Principal Office: 713-334-6121
        Facsimile: 713-322-5953
        James@mma-pllc.com
        Zach@mma-pllc.com
        Chidi@mma-pllc.com

**Attorneys for Plaintiff**